**RECEIVED**

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

FEB 07 2008
FEB 07 2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

FEB 07 2008

United States of America ex rel.

Dennis Thomas/N-02398
(Full name and prison number)
(Include name under which convicted)

**PETITIONER**

vs.

Edward Jones
(Warden, Superintendent, or authorized
person having custody of petitioner)

**RESPONDENT, and**

**(Fill in the following blank only if judgment
attacked imposes a sentence to commence
in the future)**

ATTORNEY GENERAL OF THE STATE OF

_____
(State where judgment entered)

CASE NO: _____
              (Supplied by Clerk of this Court)

08CV819
JUDGE LEFKOW
MAGISTRATE JUDGE KEYS

Case Number of State Court Conviction:
NO. 02 CR 30192 01

### PETITION FOR WRIT OF HABEAS CORPUS -- PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: Cook County Circuit Court, 2600 S. California av, Chgo, Ill 60608

2. Date of judgment of conviction: July 16, 2004

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
720-5/8-4 (720-5/9-1) ATT. Murder / 720-5/12-4(A)Agg. Battery

4. Sentence(s) imposed: 30 yrs on 720-5/8-4 (720-5/9-1) ATT. Murder

5. What was your plea? (Check one)     (A) Not guilty     (X)
                                        (B) Guilty         ( )
                                        (C) Nolo contendere ( )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:
N. A

## PART I -- TRIAL AND DIRECT REVIEW

1.  Kind of trial: (Check one):    Jury (✓)        Judge only (  )

2.  Did you testify at trial?    YES (✓)        NO    (  )

3.  Did you appeal from the conviction or the sentence imposed? YES (✗)    NO (  )

    (A)  If you appealed, give the

        (1)  Name of court:  Appellate Ct. 1st Dist 4th Div.

        (2)  Result:  Conviction & Sentence — affirm

        (3)  Date of ruling:  April 13, 2006

        (4)  Issues raised:  Trial counsel failure 2 object 2 expert testimony — Refusal of defence instructions — excessive time — mittimus correction

    (B)  If you did not appeal, explain briefly why not:  N/A

4.  Did you appeal, or seek leave to appeal, to the highest state court? YES (✗)    NO (  )

    (A)  If yes, give the

        (1)  Result  Denied w/o ruling on merits

        (2)  Date of ruling:  Sept 27, 2006

        (3)  Issues raised:  Refusal of defense instruction — 30yrs sentence was excessive

    (B)  If no, why not:  N/A

5.  Did you petition the United States Supreme Court for a writ of *certiorari*? Yes (✗)    No (  )

    If yes, give (A) date of petition:  Dec, 06  (B) date *certiorari* was denied:  Feb 20,07

## PART II -- COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES (X)    NO ( )

With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

A.  Name of court: Circuit Ct of Cook Cty

B.  Date of filing: June 5, 2007

C.  Issues raised: Sufficiency of evidence — Impartial Jury — Jury instructions — Ex-Parte Communication — Factors Implicit N Offense — 1 act 1 crime — Affiremtive Defense of Involuntary Intoxication

D.  Did you receive an evidentiary hearing on your petition?    YES ( )    NO (X)

E.  What was the court's ruling? "frivolous + patently w/o merit"

F.  Date of court's ruling: July 17, 2007

G.  Did you appeal from the ruling on your petition?    YES (X)    NO ( )

H.  (a) If yes,    (1) what was the result? Pending— Ill Ct # 07-2226

            (2) date of decision: N A

    (b) If no, explain briefly why not: N A

I.  Did you appeal, or seek leave to appeal this decision to the highest state court?

    YES ( )  NO ( )

    (a) If yes,    (1) what was the result?

            (2) date of decision:

    (b) If no, explain briefly why not:

3

2.  With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?   YES ( )          NO (X)

    A.  If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.  Nature of proceeding    _____

        2.  Date petition filed

        3.  Ruling on the petition

        3.  Date of ruling

        4.  If you appealed, what was
           the ruling on appeal?

        5.  Date of ruling on appeal   _____

        6.  If there was a further appeal,
           what was the ruling ?    _____

        7.  Date of ruling on appeal   _____

3.  With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?
           YES (X)   NO ( )

    A.  If yes, give name of court, case title and case number: _Dennis Thomas V Edward Jone, et al — # 06C – 7113_

    B.  Did the court rule on your petition? If so, state
        (1)  Ruling: _Defendant withdrew petition 2 exhauste state claims w/o prejudice_
        (2)  Date: _Jan – 07_

**4.  WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

**YES** (X)   **NO** ( )

If yes, explain: _Ill Appellate Court 1st Dist 4th Div, Ill Appeals Ct # 07 – 2226_
_Seven — Two, Two, Two, Six._

4

# Part III —

## Petitioner's Claims

(A) Ground one: Denied Jury Instructions

(B) Ground two: Sufficiency Of Evidence

(C) Ground three: Affirmative Defense Of Involuntary Intoxication

(D) Ground four: Impartial Jury

(E) Ground five: Jury Instructions I.P.I 1.01

(F) Ground six: Jury Instructions I.P.I. 3.02

(G) Ground Seven: Inadmissiable Evidence at Sentencing

(H) Ground eight: Ex Parte Communication

(A.) GROUND ONE: Denied JURY Instructions

Defendant was charged with Attempted First Degree Murder And Aggravated Domestic Battery upon Renee Hackett (R.H), his girlfriend. R.H testified defendant smelled of liquor (H+39) That defendant had a problem with alcohol. (H+65). That defendant was talking weird. (H66) Also defendant was not slurring his words or stumbling + wasn't slow. (H+75)

Defendant's testimony was that he was extremely drunk from alcohol + drugs consumed within a 3½ hr time span. (KK20,21,22) Defendant's defense was a lower mental state. Defense requested jury instructions on the definition of the term "intent". That is an essential element of Attempted First Degree Murder. It was rejected based on a misunderstanding of the committee notes. (KK.11,12,13.) (Exhibit A). With out this instruction the jury could not consider defendant's testimony. He was to drunk to have intent 2 Kill.

A1

During deliberations, jury asked "Was his (defendants) blood for drug alcohol level measured at the hospital". (KK 106, 107). This shows the jury considered defendant testimony.

With out this instruction defining the word "intent" which is a essential element of the offense — the state failed to prove beyound a reasonable doubt every element necessary to convict. Defendant request a new trial.


ACCOUNTABILITY & RESPONSIBILITY          **5.01A**

## 5.01A  Intent

A person [ (intends) (acts intentionally) (acts with intent) ] to accomplish a result or engage in conduct when his conscious objective or purpose is to accomplish that result or engage in that conduct.

### Committee Note

720 ILCS 5/4–4 (West, 1999) (formerly Ill.Rev.Stat. ch. 38, § 4–4 (1991)).

This instruction is a slightly modified version of the instruction approved in *People v. McClure,* 93 Ill.App.2d 450, 235 N.E.2d 677 (2d Dist.1968).

This definition did not appear in earlier editions of IPI–Criminal. In view of *People v. Brouder,* 168 Ill.App.3d 938, 523 N.E.2d 100, 119 Ill.Dec. 632 (1st Dist.1988), the Committee believes its presence in this edition is now necessary. In *Brouder,* the court found reversible error in the trial court's refusal to define the word "knowingly" when the jury had twice specifically requested a definition and reported its confusion regarding that word. There is no reason to believe the result in *Brouder* would have been different had the word "intent" been at issue.

The Committee takes no position as to whether this definition should be routinely given in the absence of a specific jury request. *See People v. Powell,* 159 Ill.App.3d 1005, 512 N.E.2d 1364, 111 Ill.Dec. 727 (1st Dist.1987), for the general proposition that the words "intentionally" and "knowingly" have a plain meaning within the jury's common understanding. If given, it should only be given when the result or conduct at issue is the result or conduct described by the statute defining the offense.

Use applicable bracketed material.

For an example of the use of this instruction, see Sample Set 27.07.

Exhibit A



**5.01**                                    MENTAL STATE

## 5.01  Recklessness—Wantonness  🖫

A person [ (is reckless) (acts recklessly) ] when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

[An act performed recklessly is performed wantonly.]

### Committee Note

720 ILCS 5/4–6 (West 1994) (formerly Ill.Rev.Stat. ch. 38, § 4–6 (1991)).

*See People v. Baier,* 54 Ill.App.2d 74, 203 N.E.2d 633 (1st Dist.1964).

The bracketed second paragraph is for use in conjunction with offenses including a mental state of "wantonness." In such cases, also give the bracketed second paragraph defining that term.

When wantonness is an issue, Section 4–6 requires the trial court to determine whether the statute using that term "clearly requires another meaning." If so, the jury should be instructed accordingly.

Use applicable bracketed material.

(B) Ground two: Sufficiency Of Evidence

R.H. substain a laceration to the neck and defensive wounds to the chin and hand. The fact R.H.(II 22) required surgery and had scars was sufficient to prove Aggravated Domestic Battery.

However, the state elicited testimony from R.H that she substain 2 (two) stab wounds to the neck and stab wounds to the chin and two fingers of one hand.(HH51) To support Attempted First Degree Murder, the state was required to prove that the injuries substain were life-threatening. To corroborate R.H. testimony the state engaged expert medical testimony. The Doctor stated on direct that in his opinion the injuries were life-threatening, because the vital machinery comes there, carotid artery, airway, esophagus (II 20,21) On cross examination, it was revealed the sources of Doctor's opinion. Which was the summary that stated "ligation" of multiple bleeding vessels and they were "ligated"(II 23) AND that's all it says.(II 24) Also No permanent damage (II 24)

B1

Defense has shown that the injuries were not life-threatening. The state tries to revive their case.

State: If she (R.H) did not receive emergency surgery, do you have an opinion whether or not she would have lived?

Defense: Objection, Speculation

Court: overruled.

Witness: I would assume she was dying. (II 26)

Recross Examination.

Defense: That's merely an assumption, right?

Witness: Yes, of course. (II 27)

The medical evidence, does not support an Attempted First Degree Murder. Defendant Requests a new trial.

B2

(C) Ground three: Affirmative Defense
OF Involuntary Intoxication,

Trial counsel in pre-trial presented the
affirmative defense of involuntary intoxication, due 2
drug addiction. (Exhibit C1)(Rcc3-13). AND again
the first day of trial after the jury was
empaneled. (HH11). This defense was rejected
based on a misunderstanding for the
requirement of presenting this defense.
The Illinois Supreme Court revisted this defense
and ruled that trick, artifice or force as too
narrow. Based on this ruling defendant is
entitled to have the jury consider this
affirmative defense. Defendant requests
a new trial to allow the jury to consider
the affirmative defense of involuntary intoxication
due to drug addiction. (Exhibit C2) not enclosed
due to budget reductions. Review: Hari, 300 Ill
Dec. 91, 843 NE² 349. That is controlling.

# Exhibit C1

1    THE CLERK:  Dennis Thomas, Sheet 23.

2    MS. KENT:  For the record, Assistant State's

3    Attorney Elizabeth Kent, K-E-N-T.

4    THE COURT:  This matter is here today as I recall

5    for argument on the motion to strike the Defendant's

6    affirmative defense of involuntary intoxication, is

7    that right?

8    MS. CARBELLOS:  That's correct.

9    THE COURT:  I have the State's memo and motion.

10        Do you have anything to present?

11    MS. CARBELLOS:  No, I don't, just orally.

12    THE COURT:  All right.  Well, I have read Miss

13    Kent's.

14        I'm ready to hear from you.  What do you

15    want to say?

16    MS. CARBELLOS:  Who me?

17        First of all, with regard to Miss Kent's

18    motion, I would like to correct a few of the facts that

19    are incorrect.

20        At the bottom of Page 1, she is alleging

21    that Mr. Thomas told Renee that his aunt told him he

22    had to kill her and her daughter.

23        That's not true.  He said that his aunt told

24    him he had to kill a virgin.

1          THE COURT:  What are you reading?

2          MS. CARBELLOS:  Bottom of Page 1 and then the top

3     of Page 2.

4              What he said was --

5          THE COURT:  That she had purchased a jacket for

6     the boyfriend?

7          MS. CARBELLOS:  No, at the last sentence, when

8     the argument began to escalate, the Defendant told

9     Renee that his aunt told her that he had to kill her

10    and her daughter.

11             That's not true.  He told Miss Hacket that

12    his aunt had told him that he had to kill a virgin.

13    He went on to say, "Are you a virgin?"

14             She then questioned him and said, "What is

15    wrong with you?  What is wrong with you?"  You know,

16    I'm not -- even Miss Hacket could see that there was

17    something terribly wrong with Mr. Thomas at that time.

18             Further on, Miss Kent alleges that he went

19    to the liquor store and bought a fifth of some kind of

20    alcohol.

21             Well, that's not true.  The ingestion of

22    drugs and alcohol that day consists of smoking crack

23    cocaine, a fifth of Richards wine, and a half a pint of

24    gin, and all of that was consumed prior to him having

1    this argument with Miss Hacket.

2            Furthermore, Miss Kent forgets the fact that

3    Mr. Thomas -- this is based on their detective's support

4    does not remember what happened during the altercation.

5    He remembers things that led up to it.  He remembers

6    things after, but does not recall the actual

7    altercation and what he did, if anything.

8            We have filed an affirmative defense of

9    involuntary intoxication.  Miss Kent cites several

10   cases.  The dates, the years of those cases are 1988,

11   1992, the most recent is 1993; 1987, 1975.

12           Defense is fully aware that as of 1992, the

13   voluntary intoxication statute was eliminated, but that

14   is not what we filed, so that argument is moot as far

15   as we are concerned.

16           We are not alleging voluntary intoxication.

17   We are alleging involuntary intoxication based on

18   chronic drug addiction, chronic multiple drug

19   addiction, and poly substance drug abuse.

20           His poly substance drug abuse caused at that

21   moment in his life disassociative and fragmentary

22   reactions to what was going on around him.  He had a

23   psychotic reaction to the substances that were in his

24   body.

1          Our expert, Dr. Lipman, who is an expert in

2     neuropharmacology, would testify that someone with a

3     drug addiction like Mr. Thomas, who began his drug use

4     at age fourteen -- he's now fifty years old -- can have

5     the psychotic episodes even without ingesting any

6     drugs, so this may have happened.

7          Of course, we don't know that, without him

8     having alcohol and drugs in his system, but he just

9     happened to have imbibed before this episode.

10          The effects of that drug abuse on his mental

11     status creates an acute toxic psychosis and that is

12     exemplified by he does not recall what happened.

13          He has no recollection of another fact they

14     are alleging, that he called 911 from the apartment.

15     He has no remembrance of that whatsoever.

16          Dr. Lipman further analyzed some data, his

17     drug injection, and interpolated that he would have had

18     a BAC at that point in time .205, and that combined

19     with the crack that was in his system, that he had

20     shaky functioning, he was going through withdrawal, he

21     could not control himself.

22          With regard to drug addiction, as time

23     passes and drug abuse continues, a person goes from

24     voluntary to compulsive drug use and uncontrollable

1    drug use, and that is the basis of our defense, that he

2    could not control his use of drugs and alcohol, and

3    that we also know now that addiction harms the brain

4    cells.  It alters the functioning of the brain, so he

5    was unable to control himself.

6              With regard to the State's cases that they

7    cite, particularly People versus Kyse, K-Y-S-E, the

8    Court there said intoxication must be so extreme that

9    it entirely suspends all reason and negates the intent

10   needed when there is a element --

11             THE COURT:  That's voluntary intoxication.

12             MS. CARBELLOS:  Okay.

13             Also in Gerrior, G-E-R-R-I-O-R, in that

14   particular case, the only issue was that the Court

15   disallowed instruction on involuntary, but the defense

16   was allowed to present evidence of the intoxication

17   through an expert, which is exactly what we are asking

18   to do.

19             People versus Larry --

20             THE COURT:  Expert what?

21             MS. CARBELLOS:  There was an expert who testified

22   as to whatever substance abuse, three drugs would cause

23   bizarre behavior.  That was allowed at trial.

24             THE COURT:  Well, wait a minute.  Does that case

1    stand for something different than what Miss Kent says,

2    that it must result from some outside influence such as

3    trickery, deceit, artifice, or force?

4            Is there evidence of that in Gerrior?

5        MS. CARBELLOS:  Judge, unfortunately as you well

6    know, case law does not keep up with modern trends and

7    research.  It lags behind, and that's what happened

8    with drug addiction.

9            These cases are so old, we now know after

10   twenty years of research that drug addiction is not

11   necessarily a voluntary thing, so we are talking about

12   involuntary.

13       THE COURT:  Well, you are missing the fact that

14   the statutes, the Legislature saw fit to address this

15   whole series of subject matter in 2002, and they

16   eliminated voluntary intoxication, and we now have

17   involuntary as we have had for many, many years, and

18   these cases simply provide a gloss for the statute as

19   far as involuntary intoxication is concerned.

20           Do you have any case that conflicts with

21   what she says here?

22       MS. CARBELLOS:  I don't have any case that

23   conflicts with what she says here, but I do have a case

24   People versus Brumfield, B-R-U-M-F-I-E-L-D, 390

1    Northeast 2D 589, 1979.

2        THE COURT:  That's recent?  Not '93 and '94

3    cases?

4        MS. CARBELLOS:  Well, that case, it stands for

5    something else.  The something else that it stands for

6    is that the Appellate Court in that case said that when

7    the State filed a written motion in limine requesting

8    the Trial Court to instruct the Defendant to refrain

9    from any mention of intoxication or drug condition,

10   that that was reversible error.

11        First of all, they had no right to do that,

12   because what they are doing is asking you to get rid of

13   a defense.  The Appellate Court said the Trial Court

14   allowed that motion, so the Trial Court struck a

15   defense before any evidence was heard.  It was

16   fundamental error.  It was error to preclude evidence

17   of intoxication or drug condition that would negate the

18   intent, that there was no obligation on the part of the

19   Defendant to prove that he had sufficient evidence to

20   establish a defense, and the State and Trial Court were

21   without authority to question the propriety of that

22   defense prior to trial.

23        Both parties -- and the Trial Court

24   proceeded upon the faulty assumption that the

1    Defendant's offer of proof beyond the efficacy of the

2    defense of involuntary intoxication, then they go on to

3    cite the case of Walker, and by saying that a Defendant

4    has the right to present his defense at trial, and if

5    the Court chooses not to instruct a jury on involuntary

6    intoxication, then that's a different issue.

7         THE COURT:  Well, I think the Court has the power

8    if it grants this motion to strike to prevent this

9    expert evidence that you are seeking to introduce.  I

10   can't prevent him from saying what he wants to say, but

11   I dare say that he is not going to say somebody forced

12   him to drink it, or somebody tricked him to drink it.

13   That's not what he said.

14        If the State prevails on this motion, you

15   are not going to be able to present whatever evidence

16   to that.  Whatever he recalls, whatever he wants to

17   testify, he wouldn't get any instruction, unless he

18   says it's involuntarily adduced, that's a different

19   story.

20        MS. CARBELLOS:  What's happening is that by not

21   allowing him to put on a defense, he now is forced into

22   the position of being forced to testify in order to

23   present a defense.

24        THE COURT:  I can only go on the basis of what

1    the offer is here, and that is, you have two expert

2    witnesses who are about to come in and testify that in

3    their opinion, based upon his chronic use and abuse of

4    alcohol, that is equivalent to involuntary consumption,

5    and the State has presented cases to the opposite, case

6    law from the Appellate Court of Illinois indicating

7    what voluntary and involuntary intoxication is all

8    about, and it's very traditional.

9        I don't see anything new or earth-shaking

10   about what they have said.  It's in conformity with the

11   law.

12       State have anything more to say than what

13   you say in the very comprehensive memo?

14   MS. KENT:  The only point I would bring out, I

15   would refer you to the last case I do cite, People V.

16   Rogers.  In that case, the Defendant on appeal,

17   addressed this exact issue.  There is no difference at

18   all.

19       The Supreme Court in that case heard on

20   appeal the issue from the Defendant he raised at trial,

21   he should have been allowed to raise the defense of

22   involuntary intoxication based upon his addiction.  The

23   Supreme Court said no, it was not a viable defense.

24   In fact, the case facts were very similar.

1          In People versus Rogers, during trial, there

2   was extensive testimony about the Defendant's drug use.

3   At trial, the Defendant tried to assert voluntary

4   intoxication, but it didn't work; but on appeal, he

5   said he should have been also allowed to assert

6   involuntary intoxication based upon his addiction.

7   That's it.  It's the same exact facts.

8          The Supreme Court slapped that down and said

9   that's not an appropriate use of this defense, and

10  because the Supreme Court has ruled on this case, I ask

11  that you strike their defense.

12       THE COURT:  Well, it certainly appears so.

13       MS. CARBELLOS:  Well, Judge, one word about

14  People versus Rogers, he asserted voluntary

15  intoxication.  It's clearly different from what we are

16  asserting, because he was allowed to present an expert

17  witness who was allowed to testify at trial as to drug

18  addiction.  That's all we are asking to do.

19       MS. KENT:  That's --

20       THE COURT:  You are missing what she says on the

21  next page.  On the appeal inter alia, Defendant

22  contends he was improperly denied from adducing the

23  defense of involuntary intoxication through the

24  testimony of his expert.  Defendant argued before the

1   Court Defendant's drug use was involuntary due to his

2   addiction.  Supreme Court held Defendant's assertion

3   that he was involuntary intoxicated due to his

4   addiction was not a viable defense.  Supreme Court held

5   that the use of the term involuntarily in the statute

6   meant intoxication by external source such as trick,

7   artifice, force.  It answered the question.

8          Motion to strike affirmative defense will be

9   allowed.

10          I'm ready to set the case for trial.

11       MS. CARBELLOS:  Let's do that.

12       THE COURT:  Bench or jury?

13       MS. CARBELLOS:  Jury.

14       THE COURT:  Jury?

15       MS. CARBELLOS:  Yes, sir.

16       THE COURT:  Ready next month?

17       MS. CARBELLOS:  No, I'm not here next month, but,

18   yeah, I would be ready.

19       THE COURT:  Well --

20       MS. CARBELLOS:  Judge, we are out to --

21       THE COURT:  You have two juries on the 5th.

22       MS. CARBELLOS:  Right.

23          It's up to you.  Burton is I believe 2003.

24       MS. MOJICA:  We have started notifying people on

(I) Ground four:

## Impartial Jury

Juan Gomez was examine and express he could be fair to both sides, and so did Beth Weller. (RHH 41-45)

### After lunch

Miss Weller express in plain language "I dont think I can be fair and impartial" (R.HH 1-5) She was not rehabilitated and was excuse for cause by defense. (RHH12)

Mr. Gomez said "I am really nervous I dont handle this"

Court: You cant handle this?

Mr. Gomez: No. Like first being, first time being in front of people. I am shaking I cant — — —

Court: Lets go into chambers. (RHH31)

D1

MR. Gomez express concerns about his health so as not to be on the panel (R.HH 31-34) MR. Gomez was taken into chambers and question about his health, by the COURT. Never was he question about how this may or may not affect him being on the jury. MR. Gomez was not rehabilitated. The court was more concern with a run on the jurors. (R.HH 34-38) The trial court did not prevent trial counsel from challenging for cause or use an available peremptory challenge. Since defendant was in chambers, who will MR. Gomez see as the root cause of him being on the panel? Defendant was prejudice because a bias juror was impanel. It is the risk, not the reality, of being denied a fair and impartial juror to sit on the jury, That is sufficient to deny a defendant a fair trial. A impermissible risk, Defendant request a new trial.

D2

(E) Ground fire:

# Jury Instructions

Illinois Pattern Jury Instructions 1.01, criminal (2000) was given without objection was prejidicial to defendant in that it allowed the jury to go outside the well of evidence Presented to find a verdict.

"You should consider all the evidence in light of your own observations and experiences in life" People in Lowndale have different observations and experiences in life than people from CICERO OR Bridgeport. This instruction was highlighted as "the common sense instruction." (RKK77) This line of instruction allowed the jury to consider what would I do, instead of what defendant did. Guilt or innocence must be determined solely on the evidence presented. Defendant request a new trial. (RKK97)

# (F) Ground Six

## Jury Instructions

Illinois Pattern Jury Instruction 3.02, (criminal 2000) on circumstantial evidence was prejudical to defendant in that it allowed the jury to speculate on matters not in evidence.

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all of the other evidence in the case in arriving at your verdicts" IPI 3.02 (criminal 2000)

At trial there was only direct evidence presented, eyewitness testimony. The committee notes clearly states 'do not use this instruction when only direct evidence is presented.

Defendant request a new trial.

(G) Ground 7  Inadmissible Evidence At Sentencing.

During mitigation, trial counsel presented expert in Neuropharmacology and substance abuse.(0012) Expert purpose was 2 establish an affirmative defense — but failed.(HH11). Trial counsel nor expert witness warn defendant his self-admitted statements would be use against him at sentencing. On direct, expert detailed a very extensive life history of drug + alcohol use. (0013-14). On cross-examination expert detailed a life of prior bad acts (0032) That was not part of the pre-sentence report. Trial counsel objected, but was overruled.(0032) State continue, stealing car at 15, James and Martha, robbing people + defendant would join. (0032) Military history.(0033) stabbing in the chest.(0034)

During aggravation, State present defendants Military history, and the stabbing n the chest for a more servel sentence under prior criminal activity (PP15-16)

G 1

The state admits "... from the mitigation expert that this is what this defendant self-admitted to him." (PP16-17)
In addition that defendant "caused harm" (PP12-14) Defendant was convicted of attempted murder and aggravated battery. Judgment was suppose to be entered only on the greater offense. "Harm caused" is clearly an element of aggravated battery — thus was not to be considered during sentencing.
Trial court stated it considered arguments and evidence in aggravation.. mitigation. (PP28-29)
Defendant request a new resentencing hearing without inadmissible evidence.

G2

(H) Ground eight

## Ex Parte Communication

During deliberations, the jury ask a question "was his blood for drug alcohol level measured at the hospital?(KK 106,107) Trial counsel waived defendants presence with out consent. Nor did trial counsel inform defendant as to the events in open court. This happen during a critical stage of trial which involed defendants substantial rights.

Courts reply "Jurors, you have received all of the evidence admitted at trial and will have to relie on that evidence in arriving at your verdicts. Please continue your deliberations." (KK 106,107)

Defendant could have told trial counsel his blood was drawn, thus helping in his defense. Defendant's B.A.C was aviliable, it was used at sentencing as peoples exhibit #1.(0030).

H1

The state withheld relevant information that was material 2 an issue at trial (How drunk was defendant?) Expert witness commented on the report he saw"... On the report I saw 16 milligrams per deciliter" (0042). Seven-teen hours later defendant was still drunk. Defendan request a new trial (because relevant information was with-held, that would have made a difference in the outcome of the trial.

On the other hand, trial counsel failed to do his job. The B.A.C report was easy to get from the hospital, the state had a copy. This is similar to an alibi defense. A independent corroboration of the defense's theory of the case by a neutral and disinterested party can undermine confidence in a verdict. Trial counsel failed to provide this alibi witness (B.A.C. Report.) Defendant request a new trial.

H2

(C)  Ground three _____
     Supporting facts:

_____

_____

_____

_____

_____

_____

_____


(D)  Ground four _____
     Supporting facts:

_____

_____

_____

_____

_____

_____

_____


2    Have all grounds raised in this petition been presented to the highest court having jurisdiction?
          YES (X)    NO (  )

3.   If you answered "**NO**" to question (16), state briefly what grounds were not so presented and why not:

_____

_____

## PART IV -- REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing _Public Defender Office_

(B) At arraignment and plea _Same as above_

(C) At trial _Same as above – Crystal Carbellos, 2650 S California, Chg Ill 60608_

(D) At sentencing _Same as above_

(E) On appeal _State Appellate Defender – Rebecca Ivy Levy – 203 N LaSalle St Chg Ill 60608_

(F) In any post-conviction proceeding _None appointed._

(G) Other (state): _NA_

## PART V -- FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES (  )   NO (X)

Name and location of the court which imposed the sentence: _NA_

Date and length of sentence to be served in the future _NA_

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _Jun 22, 2008_
(Date)

_____
Signature of attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.

_Dennis Thomas_
(Signature of petitioner)
_N-02398_
(I.D. Number)
_P.O Box 99_
(Address)
_Pontiac, Ill 61764-0099_

REVISED 01/01/2001

(I) Ground nine:

Trial counsel failure during guilt and
sentencing — deprived defendant of
effective assistance of counsel.

On day of trial, defense ask the court to
present the Affirmative Defense of involuntary
intoxication. It was struck once, and now twice.
The indictment was read in open court which
stated two offense's for one physical act and
that were lesser include offenses. Trial
counsel's defense was sympathy — because
he was drunk he's not guilty of any
offense. Trial counsel should have
known the law, if she had instead of
sympathy — counsel would have stress
he is guilty of lessor, and inform the
jury they could decide on the charges.
One or the other not both. To further
demonstrate lack of knowledge of the law —
State ask defense not argue a lesser
offense. And defense went for it. This gave
the state free rein to argue one act
two offense's to the jury.

I 1

OR presentation of evidence to the jury. There was only R.H + D.T who were present. R.H. said he was drunk, but not that drunk. D.T said he was WAY 2 drunk. It went to a matter of who to believe. A BAC report from the hospital would have help the jury understand, how drunk D.T was. The state had this information why not trial counsel? Lack of due diligence in gathering facts to support defendant's position. A lower mental state.

I2

Failure to get another opinion from another Doctor instead of depending upon rules of evidence to disclose flaws in Dr. Yario, opinion. That would have explain how opening the neck to let out a blood clot is insane. Why sickle cell is not the cause of bleeding under the skin, How many wounds did R11. substain to the neck? I think, I dont' remember, I think there were two on the left side. Speculation on a material element presented to the jury is not evidence. More than one is intent to kill. How many were there? Failure to secure a different opinion on the nature of injuries suffered, Again lack of due diligence in presenting a defense. That is, use of a deadly weapon shows intent,

I 3

Jury instructions: I.P.I. 1.01 + 3.02 = allowed the jury to go outside the evidence to come to a verdict. Trial counsel should have objected to these instructions instead of going along with the program to send defendant to the penitentiary.

Trial counsel wavied defendant's presence. When jury sent a note that was on a matter befor the court. Trial counsel denied defendant a right that only he could give-up. Lack of knowledge on the rights of defendant, deprived defendant of a fair trial.

I 4

# Impartial Jury

Defendant's right to a fair & impartial jury was violated. Mr. Gomez stated he could not do this. He expressed concerns about his health. Mr Gomez should have been excused ~~for cause~~, he was not rehabilitated. Trial counsel failed 2 remove a juror who did not want 2 be on the jury. If you want to be there you do a good job — if you dont you do a bad job. Trial counsel failed to ensure an impartial ~~jury~~.

# Inadmissible Evidence
## At Sentencing.

In mitigation good things are suppose to be said about defendant, For a less sever sentence, Trial counsel use expert witness who said nothing good about defendant. Related a life of drug & alcohol use also prior criminal acts, That was not part of the pre-sentence report, That the state argued in Aggravation for a more sever sentence, Expert nor trial counsel informed defendant his self-admitted acts would be used against him at sentencing. Again trial counsel failed to understand the law involved in sentencing. Trial counsel failed to protect defendants right to a fair Sentencing hearing. Not help the state.

I-6

102795

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

September 27, 2006


Ms. Rebecca I. Levy
Assistant Appellate Defender
203 N. LaSalle St., 24th Floor
Chicago, IL 60601

No. 102795 - People State of Illinois, respondent, v. Dennis
              Thomas, petitioner.  Leave to appeal, Appellate
              Court, First District.


The Supreme Court today DENIED the petition for leave to
appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court
on November 2, 2006.



RECEIVED
SEP 2 9 2006
DOCKETING DEPARTMENT
State Appellate Defender
1ST DISTRICT



4

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

February 20, 2007

Mr. Dennis Thomas
Prisoner ID N-02398
P.O. Box 99
Pontiac, IL  61764-0099

Re:   Dennis Thomas
      v. Illinois
      No. 06-8434

Dear Mr. Thomas:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

*William K. Suter*

**William K. Suter**, Clerk



# OFFICE OF THE STATE APPELLATE DEFENDER
## FIRST JUDICIAL DISTRICT

203 NORTH LASALLE STREET
24TH FLOOR
CHICAGO, ILLINOIS 60601
TELEPHONE: 312/814-5472
FAX: 312/814-1447

**MICHAEL J. PELLETIER**
DEPUTY DEFENDER

October 2, 2007

**SUSAN R. CARR**
DIRECTOR OF SUPPORT SERVICES

Mr. Dennis Thomas
Register No. N-02398
Pontiac Correctional Center
P.O. Box 99
Pontiac, IL 61764

Dear Mr. Thomas:

In response to your recent letter, the entire appellate process takes about 2 years. The first year is spent getting your complete record ready for an attorney.

What will be argued on appeal is determined by the attorney assigned to your case. An attorney will not be able to make any decisions until he or she receives a complete record on appeal.

Finally, since this office represented you on direct appeal, we will have a copy of your direct appeal briefs. There is no need to send a copy to this office.

Sincerely,

Susan R. Carr
Director of Support Services



Order Form (01/2005)



## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JOAN H. LEFKOW | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 7113 | **DATE** | FEB 0 2 2007 |
| **CASE TITLE** | U.S. ex rel. Dennis Thomas (# N-02398) v. Warden Edward Jones | | |

**DOCKET ENTRY TEXT:**

The petitioner's motion to withdraw his habeas petition [#9] is granted. The habeas petition is dismissed without prejudice to re-filing suit after the petitioner exhausts available state court remedies. The case is terminated. The petitioner's motion for appointment of counsel [#4] is denied as moot.

■ [Docketing to mail notices.]

mjm