# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENNIS THOMAS, | ) |
| | ) |
| Petitioner, | ) |
| | ) No. 08 C 00819 |
| v. | ) |
| | ) Judge John J. Tharp, Jr. |
| MARC HODGE,[1] | ) |
| | ) |
| Respondent | ) |

## MEMORANDUM OPINION AND ORDER

Dennis Thomas is imprisoned at the Lawrence Correctional Center, serving a thirty-year sentence for attempted first-degree murder. Thomas was convicted in 2004 after a jury trial in the Circuit Court of Cook County for stabbing his then-girlfriend five times. He now petitions for a writ of habeas corpus under 28 U.S.C. § 2254. In his timely *pro se* amended petition,[2] Thomas

---

[1] The current warden of the Lawrence Correctional Center has been substituted for the original respondent, Gerardo Acevedo. *See* Fed. R. Civ. P. 25(d); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

[2] Thomas's amended habeas petition, filed on November 28, 2011, is the operative habeas petition. *See Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002) (amended habeas petition supersedes original habeas petition). The amended petition appears to be timely. The one-year statute of limitations for filing the petition, 28 U.S.C. § 2244(d)(1)(A), began to run upon the denial of Thomas's petition for *certiorari* in the U.S. Supreme Court on February 20, 2007, when Thomas's judgment became final. About 352 days had run off of the 365 day clock when the habeas petition was filed on February 7, 2008. On February 12, 2008, Thomas's case was stayed pending the disposition of his pending post-conviction proceedings in state court. Minute Entry 2/12/08 (Dkt. 9).

Thomas filed an amended petition for habeas corpus on November 28, 2011, twenty days after the stay was lifted in federal court and within the thirty-day deadline set by the court. Minute Entry 11/8/11 (Dkt. 43, 45). The Supreme Court has set a standard for amendments made after the statute of limitations has run—new claims relate back to the date of the original pleading if "the original and amended petitions state claims that are tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). An amended habeas petition does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those of the original pleading…." *Mayle*, 545 U.S. at 650. Thomas raises two new claims in his amended petition—confrontation of witnesses and fair trial. The fair trial claim

raises seven possible grounds for habeas relief. For the reasons set forth below, the Court denies

the petition for a writ of habeas corpus and declines to issue a certificate of appealability.

## FACTS[3]

In November 2002, the petitioner Dennis Thomas, Renee Hackett (Thomas's girlfriend at

the time), and Hackett's sixteen-year-old daughter, Chendre Brown, shared an apartment at 2650

West Ogden Avenue in Chicago, Illinois. According to Hackett's testimony at trial, Hackett and

Thomas had an argument the previous month regarding Hackett's purchase of a jacket for her ex-

boyfriend. Thomas was upset with Hackett because he thought she was being unfaithful. Hackett

further testified that on the afternoon of November 1, 2002, Hackett and Thomas were at home

sitting on the couch and talking about "normal things." Hackett noticed that Thomas smelled of

alcohol, but this was not new or unusual. Thomas told Hackett that his aunt told him earlier that

day that he "had to kill a virgin." Thomas also told Hackett that Chendre, Hackett's daughter,

---

appears to be tied to the same "common core of operative facts" as the original pleading. The confrontation claim raises facts of a different type (that Thomas was unable to physically see witnesses at his trial), although not time (since the facts relate to the same trial as Thomas's other claims)—and the new claim must "differ in both time and type" to not relate back. Accordingly, the date of the original pleading, February 7, 2008, will stand as the date on which to measure the statute of limitations under § 2244.

Further, the statute of limitations did not need to be tolled while Thomas pursued state post-conviction relief, because Thomas filed his initial habeas petition in federal court while his state post-conviction petition was already pending. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation…").

[3] The facts in this opinion are principally derived from the state appellate court's opinion affirming the trial court's dismissal of Thomas's petition for post-conviction relief. *People v. Thomas*, No. 1-07-2226 (Ill. App. Ct. 1st Dist. Nov. 10, 2009) (Dkt. 60-2). The state court's factual findings are presumed to be true, and Thomas has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012).

was a virgin and that he was not going to allow another of his children to become pregnant. Hackett told Thomas that Chendre was not his daughter.

Thomas got up and began to choke Hackett. Hackett fought back and was able to get away from Thomas, but Thomas caught her, threw her to the ground, and held her down. Thomas then said, "now see, I have to kill you." Thomas reached into his pocket, pulled out a red Swiss Army knife, and stabbed Hackett once in the neck. When Thomas tried to stab Hackett a second time, Hackett turned her head because she was "afraid he was going to slit [her] throat and he got [her] on the chin." Thomas also inflicted superficial wounds to Hackett's finger and thumb. Thomas got up, called 911, and reported that "he had stabbed his wife," but he gave the 911 operator the wrong address. Thomas then ran out of the apartment. Hackett picked up the phone to call for help. She then saw Thomas come back into the apartment, put the knife on the ironing board, and leave again.

At 1 a.m. on November 2, 2002, Thomas waved down a police officer and told the officer that he had badly hurt his "wife" by cutting her with a Swiss Army knife. Thomas was placed in a squad car where he told an officer that he had hurt his "wife" by stabbing her in the neck because they had an argument over Hackett "seeing other guys."

According to Thomas's testimony at trial, Thomas is a drug addict and alcoholic who has been using both substances since he was a teenager. On the day of the incident, he smoked two rocks of cocaine in the apartment he shared with Hackett, he purchased and drank a fifth of whiskey, and he purchased and drank a half a pint of gin. He testified that he blacked out while he was talking to Hackett on the couch and he could see her speaking but could not understand her words. He remembered struggling with Hackett, but then blacked out again, and the next thing he remembered was standing outside the apartment and Hackett saying, "Dennis don't stab

me." Thomas looked down and saw that he was holding a knife and had blood on his hands. He saw Hackett holding her neck. He testified that he "couldn't believe this," this was not his normal behavior, and he didn't know he had stabbed Hackett at the time. He then heard sirens, panicked, and fled, but returned to the apartment to get his jacket and left a second time.

The medical evidence at trial showed that Hackett had two surgeries for her injuries, which included five stab wounds to her neck, chin, finger, and thumb. Dr. Robert Yario, the physician who operated on Hackett, testified that the stab wounds to Hackett's neck were life-threatening and that the arteries in her neck were bleeding and needed to be surgically repaired. Because Hackett had sickle cell anemia, she developed a blood clot that had to be removed in a second surgery. Hackett testified that she was in the hospital for seventeen days. Dr. Yario further testified that Hackett suffered no permanent physical injuries due to the incident.

During deliberations, the jury sent a note to the judge, asking, "Was his blood drug alcohol level measured at the hospital?" Thomas's attorney waived Thomas's presence during the courtroom discussion of the jury's note. Thomas's attorney asked the judge to respond by telling the jury that they had heard all of the evidence and to continue deliberating; the State agreed. The judge told counsel that he would tell the jury, "Jurors, you have received all of the evidence admitted at trial and will have to rely on that evidence in arriving at your verdicts. Please continue deliberating." On May 6, 2004, the jury found Thomas guilty of attempted first-degree murder and aggravated domestic battery. The judge imposed a thirty-year sentence for attempted first-degree murder.

## PROCEDURAL HISTORY

Thomas raised four issues in his direct appeal: (1) he was denied a fair trial when Dr. Yario testified about the potentially fatal nature of the knife cuts to Hackett's throat; (2) the trial

court erred when it refused to instruct the jury with Illinois Pattern Jury Instruction 5.01A, which defines "intent;" (3) the thirty-year sentence was excessive; and (4) Thomas was entitled to additional days of credit. The appellate court addressed and rejected the merits of the first three of Thomas's claims and affirmed his conviction. As to the day credit claim, the court ordered that the mittimus be corrected to reflect 623 days of credit. *People v. Thomas*, No. 1-04-2316 (Ill. App. Ct. 1st Dist. Apr. 13, 2006) (Dkt. 60-1 at 1). Thomas then filed a petition for leave to appeal with the Illinois Supreme Court, but his petition was denied. The United States Supreme Court denied Thomas's petition for writ of *certiorari* on February 20, 2007. Dkt. 60-2 at 44.

Thomas next filed a *pro se* petition for post-conviction relief in the Circuit Court of Cook County. In his petition, Thomas raised eight claims: (1) Thomas was not proven guilty beyond a reasonable doubt; (2) Thomas was not tried by an impartial jury; (3) the trial court erred in giving Illinois Pattern Jury Instructions 1.01 and 3.02 ("The Functions of the Court and the Jury" and "Definition of Circumstantial Evidence"); (4) the trial court erred in refusing a jury instruction on the affirmative defense of involuntary intoxication; (5) *ex parte* communications occurred during jury deliberations; (6) at sentencing, the trial court gave excessive weight to the victim's impact statement but gave little consideration to defendant's intoxication; (7) Thomas's conviction violated the one-act, one-crime rule; and (8) Thomas was denied effective assistance of trial and appellate counsel. On July 17, 2007, the trial court dismissed Thomas's post-conviction petition, concluding that all of Thomas's arguments were "frivolous and patently without merit." Dkt. 60-2 at 50.

On appeal of the denial of his post-conviction petition, Thomas argued that: (1) his appellate counsel was ineffective for failing to raise the argument that the evidence at trial was insufficient to establish that Thomas had the specific intent to kill Hackett; (2) it was error to

discuss the jury's note concerning Thomas's "blood drug alcohol level" outside of Thomas's presence; and (3) the jury should have been instructed on the affirmative defense of involuntary intoxication. The Illinois Appellate Court addressed the merits of each argument. As to Thomas's ineffective assistance argument, the court found that it could not be reasonably argued that (i) appellate counsel's performance was below the objective standard of reasonableness by virtue of not raising specific intent on appeal or (ii) the outcome of Thomas's direct appeal would have been different had Thomas's counsel raised that issue. Dkt. 60-2 at 14. Second, as to Thomas's jury note argument, the appellate court found that the issue was properly preserved for review, and that there was, in fact, insufficient evidence that Thomas voluntarily, knowingly, and intelligently waived his right to be present. *Id.* at 15. The court concluded, however, that Thomas's absence did not prejudice him because he did not assert that he would have requested a different instruction if he were present during the courtroom discussion of the jury note. *Id.* at 16-17. Finally, as to Thomas's argument that he was entitled to a jury instruction on the affirmative defense of involuntary intoxication, the appellate court found that, due to Thomas's long history of drug and alcohol use, the effects of Thomas's cocaine use and alcohol consumption on the day of the offense "cannot be deemed to be unexpected or unwarned," and therefore, the instruction was not required. *Id.* at 21-22. The appellate court further found that it could not reasonably be argued that Thomas's counsel's performance fell below an objective standard of reasonableness based on his failure to raise the issue of involuntary intoxication. *Id.* at 22.

In sum, the appellate court affirmed the dismissal of Thomas's petition, and later denied a petition for rehearing. Thomas raised the same three claims in a petition for leave to appeal that the Illinois Supreme Court denied.[4]

Thomas's amended petition for a writ of habeas corpus raises seven purportedly separate grounds for relief: (1) the trial court erred when it refused to instruct the jury with Illinois Pattern Jury Instruction 5.01A, which defines "intent;" (2) the trial court imposed an excessive sentence; (3) Thomas was deprived of the right to a fair trial when the trial court and defense counsel engaged in an ex parte communication to discuss a jury note and trial counsel was ineffective for waiving Thomas's presence; (4) evidence of intent to commit first degree murder was insufficient and appellate counsel was ineffective for failing to make this argument on direct appeal; (5) Thomas was denied the right to a fair trial when the trial court refused to instruct the jury on the affirmative defense of involuntary intoxication, and his appellate counsel was ineffective for failing to make this argument on direct appeal; (6) Thomas was denied the right to confrontation because his view of witnesses at trial was physically blocked by the judge's bench; and (7) Thomas was denied a fair trial based on "these errors of fact collectively" and based on

---

[4] On February 26, 2009, one year after filing his initial petition for a writ of habeas corpus in federal court, and while his state post-conviction petition was still pending, Thomas filed a successive post-conviction petition in state court. Dkt. 60-4 at 25. He raised five issues: (1) he was deprived of the ability to confront witnesses at trial because he could not physically see them over the judge's bench; (2) the hearsay testimony of two police officers was improperly admitted; (3) the State did not rebut evidence presented by the defense's expert witness; (4) the State offered inadmissible evidence of his previous criminal acts; and (5) the jury returned inconsistent verdicts. Thomas argued that he demonstrated cause for this late effort to seek relief because he was provided with insufficient time in the prison library, which deprived him of meaningful access to the courts. The Circuit Court of Cook County denied Thomas leave to file the successive post-conviction petition. The Illinois Appellate Court affirmed, and the Illinois Supreme Court denied the petition for leave to appeal on September 28, 2011. Dkt. 60-4 at 17-24; Dkt. 60-5 at 64. Meanwhile, Thomas's petition for habeas corpus was stayed in federal court pending resolution of the state post-conviction petition. That stay was lifted on November 8, 2011. Thomas filed an amended petition for a writ of habeas corpus on November 28, 2011 (Dkt. 45). The State filed its answer on April 16, 2012 (Dkt. 59).

ineffective assistance of trial and appellate counsel. In its response, the State of Illinois argues that the petition must be denied because the claims are either procedurally defaulted, *see* 28 U.S.C. § 2254(b), not cognizable, *see id.* § 2254(a), or lacking in merit.

## DISCUSSION

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. AEDPA allows this Court to grant a petition for a writ of habeas corpus by a state prisoner only on the ground that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In order for a writ to issue, a prisoner in custody pursuant to a judgment in state court must show that the state adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision by a state court is "contrary to" clearly established federal law if it applies a rule different from that established by the Supreme Court, or reaches a different outcome than that of the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002); *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir. 2013). A state court engages in an "unreasonable application of" federal law if it identifies the correct legal standard articulated by the Supreme Court, but applies it in an unreasonable manner. *See Williams v. Taylor*, 529 U.S. 362, 407 (2000). The decision must be "objectively unreasonable," and not simply incorrect or erroneous. *See Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Under the statute, courts must give "full effect" to state judgments that are consistent with federal law. *See Williams*, 529 U.S. at 383. This means applying a deferential

standard of review, under which state court rulings are given the benefit of the doubt. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

A court must construe a *pro se* petition liberally. *See Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010). Nevertheless, the statutory requirements are clear, and as set forth more fully below, two claims—(6) and (7) of the petition—cannot be considered because Thomas procedurally defaulted claim (6) in state court before attempting to raise it here and he raises claim (7) for the first time in his habeas petition in federal court. Other claims—(1), (5), and (2)—are not cognizable on federal habeas review because they exclusively raise errors based on state law. That leaves two claims for resolution on the merits—(3) and (4); as to these claims, the state courts' rulings were reasonable applications of federal law.

## I. Procedural Default – Claims (6) and (7).

A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim. *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). A claim is also procedurally defaulted "when a state court [has] declined to address a prisoner's federal claims because the prisoner [has] failed to meet a state procedural requirement." *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). To overcome a procedural default, a petitioner must establish that (1) good cause exists for the default and actual prejudice was suffered as a result or (2) the default would lead to a "fundamental miscarriage of justice." *See Morales v. Johnson*, 659 F.3d 588, 604 (7th Cir. 2011).

### A. Claim (6) – Confrontation.

In Claim (6) of his amended petition, Thomas asserts that his right to confront witnesses was violated at his trial. Thomas asserts that "[d]uring my 3 … day trial, all the witnesses for the

state [were] blocked by the judge['s] bench. I had no view of them as they gave evidence against me." Dkt. 45 at 9. With the amended petition, Thomas submitted a hand-drawn exhibit to show the layout of the courtroom—as he perceived it—during his trial. *Id.* at 11.

Thomas did not raise this claim until his petition for leave to file a successive post-conviction petition in state court in 2009. Dkt. 60-4 at 52-53. In other words, Thomas did not raise this issue at trial, in his direct appeal, or in his first round of post-conviction review in state court. In Illinois, filing a successive petition requires leave of court, and leave of court may be granted "only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) ("Petition in the trial court"). Thomas argued that he belatedly raised this claim because his access to the prison library was limited to two and a half hours per week while incarcerated in maximum security. Dkt. 60-4 at 43-45. The Illinois Appellate Court affirmed the circuit court's dismissal of Thomas's motion on the basis that "prison regulations that restrict an inmate's time in the law library do not constitute cause for purposes of filing a successive post-conviction petition." Dkt. 60-4 at 23. In other words, the appellate court did not reach the merits of Thomas's confrontation claim because Thomas did not make the requisite showing of cause and prejudice to overcome the procedural default.

Where that leaves Thomas is with a claim that has never been heard on its merits by the state courts in Illinois. The ruling of the Illinois Appellate Court that Thomas could not excuse his belated claim rests on adequate and independent state-law grounds, namely that Thomas violated 725 ILCS 5/122-1 by failing to raise the errors in prior proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 737 (1991) (a claim is procedurally defaulted if the state court clearly and plainly relies on the default as an independent and adequate state law ground for its ruling).

The appellate court also found that Thomas could not demonstrate cause and prejudice for the belated advancement of his new claim. This Court agrees. The effort to demonstrate cause due to inadequate library access must be examined on a case-by-case basis. *See Williams v. Buss*, 538 F.3d 683, 686 (7th Cir. 2008) (citation omitted). Thomas can only show cause by identifying an objective factor, and an *external* impediment, that impeded his ability to raise this claim during his initial post-conviction proceedings. 725 ILCS 5/122-1(f). *See also Lewis*, 390 F.3d at 1026. As an initial matter, Thomas was present at his own trial and therefore knew of the potential confrontation issue as early as 2004. Yet he did not raise the claim until he filed his successive post-conviction petition in February 2009, two years after he filed his state post-conviction petition. Second, Thomas asserts that he received two and a half hours per week in the library at the time he filed his initial post-conviction petition and that this was inadequate. Prisoners must receive sufficient access to prison libraries to research law and to determine what facts may be necessary to state a cause of action. *See Lewis v. Casey,* 518 U.S. 343, 350-51 (1996). Thomas received adequate library access, two and a half hours per week, during which he was able to prepare, assisted by appointed counsel, the several additional claims that he did include in his post-conviction petition. Viewed in that light, there is no reason to believe that given additional time in the prison law library Thomas would have raised his confrontation argument at an earlier time. The Court will not reach the prejudice prong, since prejudice is moot without successfully demonstrating cause. Further, Thomas did not assert a miscarriage of justice. Accordingly, Thomas's claim regarding confrontation of witnesses fails due to an unexcused procedural default.[5]

---

[5] Thomas also failed to raise this claim in his first petition for habeas corpus filed in federal court on February 7, 2008. Rather, as discussed above, he raised it for the first time in his successive post-conviction in state court, and then for the first time in federal court in his

**B. Claim (7) – Collective Error and Fair Trial.**

In Claim (7) of Thomas's amended petition, Thomas asserts "These errors of fact collectively denied me a fair trial. When you deny a defendant basic rights the result is a conviction and sentence that is fundamentally unfair, such is the case here." Dkt. 45 at 10. Thomas did not bring this claim until he filed an amended petition in federal court, nor did he effectively make an argument at any prior point that he wished all of his claims to be considered collectively under the umbrella of fundamental fairness. Since Thomas did not fairly present this claim to the state courts, Claim (7) is procedurally defaulted. *See Lewis*, 390 F.3d at 1025 (a claim is procedurally defaulted if a habeas petitioner fails to assert his federal claim at each level of state court review). Thomas has identified no cause for this default, so his claim is barred.

**II. Non-Cognizable Claims – Claims (1), (5), and (2).**

In a federal habeas proceeding, a federal court may only consider a petitioner's claims that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C.A. § 2254(a). In other words, "errors of state law in and of themselves are not cognizable on habeas review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

Thomas asserts three claims in his amended habeas petition that are based solely upon Illinois law.

**A. Claims (1) and (5) – Jury Instructions.**

---

amended petition for habeas corpus. As the respondent concedes (*see* Dkt. 59 at 20 n.5), Thomas was ordered to wait to amend his petition until the stay that was imposed pending the resolution of state court proceedings was lifted. Minute Entry, June 29, 2009 (Dkt. 16). Although Thomas would normally be precluded from asserting a new claim in an amended petition after AEDPA's one-year statute of limitations, *see Mayle*, 545 U.S. at 650, Thomas was following a court order to wait, and further the claim does not "differ in both time and type" from claims in Thomas's original petition. Accordingly, Thomas's confrontation claim is not precluded on this basis.

In Claims (1) and (5), Thomas asserts that the trial court erred in its refusal to instruct the jury regarding the definition of "intent" and the defense of involuntary intoxication.

In general, a state trial court's refusal to give a particular jury instruction does not implicate federal constitutional rights. *See Perruquet*, 390 F.3d at 510 (citations omitted); *see also United States ex rel. Waters v. Bensinger*, 507 F.2d 103, 105 (7th Cir. 1974) ("Normally … instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues.") (citations omitted). Due process, however, entitles a defendant to a fair trial, but "only if the state court committed an error so serious as to render it likely that an innocent person was convicted can the error be described as a deprivation of due process." *Perruquet*, 390 F.3d at 510. The petitioner must "draw[] enough of a connection between his right to due process and the trial court's (alleged) evidentiary and instructional errors to render his claim cognizable on habeas review." *Id.* at 512. In *Perruquet*, for example, the petitioner "[did] more than merely cite his constitutional right to a fair trial." He "articulated the theory … he wished to pursue; he has described the evidence … he has argued that preventing him from pursuing [the] theory … likely resulted in the conviction of an innocent person … [H]is petition contains enough detail to describe a claim that is within the power of a federal court to address." *Id.*

Thomas fails to tie the alleged jury instruction errors to a violation of his due process rights, and so neither claim is cognizable on federal habeas review.

      **1.      Claim (1) – "Intent."**

In Claim (1), Thomas asserts that he was entitled to Illinois Pattern Jury Instruction 5.01A ("Intent")[6] at trial and that he was

> denied the right to have [the] jury consider my testimony by way of instructions on … essential element of the offense of [a]ttempted murder. Trial c[our]t refused to allow instruction unless jury requested it *specifically*. Because the court felt it was the law.

Dkt. 45 at 7 (emphasis in original). It is clear from the context of the record, however, that Thomas is asserting not that the jury instructions omitted an essential element of the offense, but that he was entitled to an instruction defining "intent." During the jury instruction conference at trial, Thomas's counsel submitted IPI 5.01A. Dkt. 60-7 at KK-11-12. The state countered that "intent" has a "plain meaning within the jury's common understanding," and so the instruction was unnecessary unless the jury requested a definition. *Id.* at KK-12. The court refused the 5.01A instruction conditionally, adding that "If we get a note from them where they have some confusion about intentional, intent or knowledge, then I think you're right, I think they should be given [this] at that point." *Id.* at KK-13. During closing argument, the state defined attempted first degree murder, including the requirement of intent ("when he *with the intent to kill*"), and noted that the state must prove "that the defendant [performed an act which constituted a substantial step towards the killing of an individual] with the *intent* to kill the individual," or in more specific terms, "did the defendant *intend* to kill Rene [Hackett][?]" *Id.* at KK-72-74 (emphasis added). In Thomas's closing, his attorney reiterated that the State must prove intent beyond a reasonable doubt. *Id.* at KK-86. The court then instructed the jury that a "person commits the offense of attempt[ed] first degree murder when he, with the intent to kill an individual, does any act which constitutes a substantial step towards the killing of an individual."

---

[6] "A person [(intends) (acts intentionally) (acts with intent)] to accomplish a result or engage in conduct when his conscious objective or purpose is to accomplish that result or engage in that conduct." IL-IPICRIM 5.01A ("Intent").

*Id.* at KK-101. The court further instructed the jury that the state must prove "that the defendant [performed an act which constituted a substantial step towards the killing of an individual] with the intent to kill an individual." *Id.* at KK-101-02.

Although Thomas asserts that the failure to instruct the jury on the meaning of "intent" deprived him of due process, he does little to elaborate on the basis of that claim.[7] He describes why he believes he did not have the specific intent to murder Hackett, and argues that the jury was unable to consider his *mens rea* defense without the intent instruction. Dkt. 67 at 3-5. Although Thomas's *pro se* petition is entitled to a liberal construction, *see Ward*, 613 F.3d at 697, Thomas does not draw an adequate connection between the alleged error of refusing to instruct the jury with the definition of "intent" and the deprivation of his due process rights. *See Verdin v. O'Leary*, 972 F.2d 1467, 1475 (7th Cir. 1992) (bare allegations of an unfair trial and cursory references to "due process" insufficient to articulate federal constitutional claims).

Even if the Court were to regard Thomas's articulation of his due process claim as adequate, making the claim cognizable, the outcome would be no different.[8]

---

[7] The respondent asserts that this claim is procedurally defaulted because Thomas did not apprise the state supreme court of the claim's federal nature in his petition for leave to appeal. Dkt. 59 at 12. To the contrary, Thomas takes up half of his petition for leave to appeal with this topic. *See, e.g.,* Dkt. 60-2 at 3 ("This court should grant leave to appeal to clarify whether the circuit court should, at the defense's request, instruct the jury on the definition of 'intent' in the absence of a question about the definition from the jury…"); *id.* ("The current requirement that the instruction should be given only when the jury submits a question regarding the definition during deliberation does not sufficiently protect the defendant's constitutional right to due process …"); *id.* at 12 ("[T]he circuit court's refusal of th[e] requested instruction violated Thomas's right to due process and trial by jury.").

[8] The appellate court on direct appeal found that Thomas properly preserved his "intent" instruction claim because he requested the instruction at trial and because he raised the issue in his supplemental post-trial motion. Dkt. 60-1 at 14. To review the merits of Thomas's claim, this Court must examine the last state court to rule on the merits of the issue—the Illinois Court of Appeals deciding Thomas's direct appeal after trial. Dkt. 60-1. *See Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("a federal court reviewing a habeas petition should examine the decision of the last state court to rule on the merits of the issue.").

To raise a successful due process claim, a jury instruction error must "so infect[] the entire trial that the resulting conviction violates due process." *Garth v. Davis*, 470 F.3d 702, 711 (7th Cir. 2006) (citing *Estelle*, 502 U.S. at 72). Further, the instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (internal quotations and citations omitted). This Court cannot conclude that the Illinois appellate court's adjudication of Thomas's jury instruction claim "resulted in a decision that was contrary to, or involved an unreasonable application of" the facts or clearly established federal law, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The appellate court's decision to deny Thomas's instruction claim was reasonable on all counts.

There was no error in denying Thomas's requested instruction defining "intent." There was no requirement, or need, for the court to define "intent" for the jury deliberating Thomas's guilt. *See, e.g., U.S. v. LaGrou Dist. Systs., Inc.*, 466 F.3d 585, 592 (7th Cir. 2006) (citations omitted) ("We have long held that a court need not recite the differences between general and specific intent."). Even where instructions *do not* correctly set out the specific intent requirement (the instructions did do so in Thomas's case), the instructions as a whole adequately conveyed the elements of attempted murder. *See Canaan v. McBride*, 395 F.3d 376, 391 (7th Cir. 2005) (even where instructions do not correctly set out specific intent requirement, it is still possible that instructions as a whole adequately conveyed elements of crime and that the one error did not "so infect[] the entire trial"). Here, it was eminently reasonable for the appellate court to conclude that the one withheld instruction defining the meaning of a common term did not taint the larger context of Thomas's trial. As the appellate court noted, the jury was instructed in at

least two ways about intent: (1) "A person commits the offense of attempt[ed] first degree murder when he, with the intent to kill an individual, does any act which constitutes a substantial step towards the killing of an individual" and (2) the state must prove "that the defendant [performed an act which constituted a substantial step towards the killing of an individual] with the intent to kill an individual." Dkt. 60-1 at KK-101-02. Further, the jury made no request for the definition of intent during its deliberations. Dkt. 60-1 at 16. That the jury showed no confusion about the meaning of "intent" is a reasonable basis to conclude that Thomas was not denied a fair trial as a result of the withheld instruction. *See People v. Averett*, 381 Ill. App. 3d 1001, 1136 (2008) (holding that "intent" instruction was unnecessary where jury "did not specifically request a definition of the word 'intent' or exhibit confusion about the word.").

Thomas argues that without the instruction defining intent, the jury could not consider whether he had the "conscious objective" to kill Hackett. Dkt. 67 at 4. He does not explain, however, how this gloss on the definition of intent was necessary for the jury to understand the elements of the offense. Nor does he explain why the he needed an instruction defining "intent" as "conscious objective" in order to argue that he did not have a conscious objective to kill Hackett. Lawyers are permitted to offer a gloss on jury instructions so long as their explanations are consistent with the instructions and the common meaning of the terms they use. *See, e.g., United States v. Castillo*, 406 F.3d 806, 820 (7th Cir. 2005) (no error in failure to instruct jury on meaning of "in furtherance of" due, in part, to fact that the prosecutor accurately defined the meaning of the term during closing argument). The argument that Thomas did not have the conscious objective to kill Hackett could have been made with or without the instruction, and in fact the defense did argue lack of intent, asserting, for example, that to be guilty of attempted murder "you have to intend to do the act," and that had Thomas intended to kill Hackett he

would have used a bigger knife.[9] Dkt. 60-7 at KK-86-87. The jury had ample instruction and argument with which to apply the "common understanding" of the word "intent," as the appellate court reasonably concluded.

### 2. Claim (5) –Involuntary Intoxication.

In Claim (5), Thomas asserts that he should have been allowed to present the defense of involuntary intoxication to the jury. Dkt. 45 at 9. Thomas adds that while his direct appeal was pending, the Illinois Supreme Court decided *People v. Hari*, in which the court stated, "When evidence is presented showing a defendant ingested prescribed medication and suffered an adverse reaction whereby he was unable to control his own will when he committed a criminal act, a defendant is entitled to a jury instruction on the defense of involuntary intoxication." 218 Ill. 2d 275, 290 (2006) (quoting Illinois Appellate Court decision in same case).

In Thomas's case, the Illinois Appellate Court addressed this claim as a potential jury instruction error, and secondarily as a claim for ineffective assistance of appellate counsel. Accordingly, this Court will address the claim in the same manner. To the extent Claim (5) is a jury instruction error, this Court finds that it is not cognizable on federal habeas review. To the extent Claim (5) is a claim for ineffective assistance of appellate counsel,[10] this Court reaches the

---

[9] Thomas's counsel argued in her closing, "You've been told that there is an element in [] attempt[ed] murder of intent, and they must prove that element beyond a reasonable doubt, intent. You have to intend to do something. The substantial step is not enough. You have to intend to do the act … First of all, how could he have intended to do anything? He didn't walk in there holding his knife open and go for her. He had no intention of doing anything to her at all, and if he did intend to hurt her, remember the police officer who testified that he went to the crime scene that day, and he saw the Swiss army knife on the ironing board, and he saw chef knives in the kitchen. Well, please, if you intend to kill somebody, maybe you ought to go in there and get one of those great big, huge, gigantic kni[ves] so you can do the job. He didn't do that, did he? There was no intention at all. He's not guilty of trying to kill her, he's just not." Dkt. 60-7 at KK-86-87.

[10] Thomas asserts that "Claims 3, 4, 5 are ineffective assistance of appellate counsel, and due process." Dkt. 67 at 19.

claim on its merits and finds that the state appellate court's determination was a reasonable application of *Strickland*.

Thomas again fails to draw an adequate connection between the claimed jury instruction error and a deprivation of his due process rights. Thomas does refer to due process at least twice in his description of Claim (5) in his "Answer." Dkt. 67 at 22. Further, Thomas relies on the Illinois Supreme Court's decision in *People v. Hari*, in which the court noted that a trial court's refusal to instruct a jury can result in the denial of the defendant's due process rights. 218 Ill. 2d at 297. Yet Thomas does not assert that the state court committed an error "so serious" that it was likely an innocent person was convicted. *Perruquet*, 390 F.3d at 510. Nor does he extrapolate about the connection between his references to due process and *Hari* and the trial court's refusal to give the involuntary intoxication instruction. Thomas has not asserted enough in the realm of a violation of federal law to make this claim cognizable in federal court.

Even if Thomas had asserted a cognizable claim, it would fail on the merits. The appellate court's decision to deny Thomas's involuntary intoxication instruction claim was reasonable under 28 U.S.C. § 2254(d). The facts of Thomas's case simply did not support this instruction. Thomas argued to the appellate court that he was involuntarily intoxicated during the incident because his chronic drug and alcohol abuse caused him to be in a dissociative state. Dkt. 60-3 at 30. He also argued that after voluntarily ingesting drugs and alcohol, he was not fully aware of what he was doing when he attacked Hackett and that he did not expect or intend that his drug and alcohol use that day would cause a dissociative state. *Id.* at 31. The appellate court noted that Thomas

> had a long history of drug and alcohol use. Given that history, the effects of defendant's use of cocaine and consumption of alcohol on the day of the offense cannot be deemed to be unexpected or unwarned. Nor can it be argued that the effects of such drug and

alcohol use was not a conscious effect of defendant's will or a
result of his free and unrestrained choice.

*Id.* at 21-22.

The court further rejected Thomas's argument that the Illinois Supreme Court's decision in *People v. Hari* controlled the outcome. In *Hari*, the court noted, the defendant had no reason to know that taking a prescription medication could have adverse effects, but in Thomas's case, he could anticipate the effects of drug and alcohol use due to his long experience with abuse. An intoxicated or drugged person is criminally responsible for conduct unless the condition is "involuntarily produced." 720 ILCS 5/6-3. Taking a new prescription medication and suffering an unforeseeable reaction, which was the case in *Hari*, is a far cry from a sustained course of drug and alcohol abuse over thirty years. The effects of alcohol and crack cocaine are well known and not unanticipated, particularly by someone with Thomas's admitted extensive experience with them. It follows that Thomas was not deprived of his due process rights when the court denied a jury instruction premised on Thomas's voluntary, not involuntary, ingestion of drugs and alcohol on the day of the incident. *See People v. McMillen*, 961 N.E.2d 400, 405 (Ill. App. Ct. 1st Dist. 2011) (collecting cases and holding that the "knowing, or voluntary, ingestion of cocaine or other illegal drugs precludes the use of the involuntary intoxication defense"). The facts, in sum, do not support a defense, or instruction, of involuntary intoxication.

As to Thomas's claim that his appellate counsel was ineffective for not raising this issue on direct appeal, the Court reaches the merits and finds that the Illinois Appellate Court's application of the *Strickland* standard[11] was reasonable. The appellate court found that it is not arguable that by failing to raise this issue on appeal, counsel's performance fell below an

---

[11] The Illinois Appellate Court cited *People v. Hodges*, 234 Ill. 2d 1, 17 (2009), which in turn relies on *Strickland* for its analysis. Dkt. 60-2 at 66.

objective standard of reasonableness, and further that appellate counsel would not have been successful in raising this issue on direct appeal. Dkt. 60-2 at 66.

The Illinois Appellate Court correctly identified the *Strickland* standard, as articulated in *Hodges*, so the only remaining question is whether the court's application of the standard was unreasonable. 28 U.S.C. § 2254(d)(1). The Court finds nothing unreasonable about the appellate court's application of the *Strickland* standard. The appellate court reasonably concluded that in light of Thomas's voluntary and willing use of drugs and alcohol on the day in question, and his awareness of the effects of drug and alcohol use because of his long history, Thomas's claim for an involuntary intoxication instruction failed. Dkt. 60-2 at 66. Consequently, Thomas could not show that his appellate counsel was unreasonable, nor could he show that the outcome would have been different had Thomas's counsel raised the issue. *Id.* The state court's conclusion that the outcome would be the same had appellate counsel raised the claim on appeal was not an unreasonable application of the *Strickland* standard, and therefore Thomas's ineffective assistance argument fails on the merits. *Id.*

**B.  Claim (2) – Excessive Sentence.**

Thomas also argues that his thirty-year sentence for attempted first-degree murder is excessive. Specifically, he claims that

> During sentencing, trial c[our]t considered, that *harm* was caused. That is a[n] element of aggravated battery but is implicit i[n] the offense of attempted murder. Also the greater [and] lesser offense was put to the jury – from one act – yet, not told they had a choice, thereby allowing the trial court to impose the maximum sentence as suggest[ed] by the People.

Dkt. 45 at 7 (emphasis in original). Claim (2) is procedurally defaulted and not cognizable on federal habeas review.[12]

### 1. Claim (2) is procedurally defaulted.

Thomas has exhausted his state court remedies without properly asserting a federal claim at each level of state court review. Claim (2), therefore, is procedurally defaulted.

A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim. *Lewis*, 390 F.3d at 1026. In other words, where the petitioner has already pursued his state court remedies, as in Thomas's case, "and there is no longer any state corrective process available to him, it is not the exhaustion doctrine that stands in the path to habeas relief … but rather the separate but related doctrine of procedural default." *Bolton v. Akpore*, 730 F.3d 685, 696 (7th Cir. 2013). Here, Thomas did not fairly present Claim (2) to the state courts and the opportunity to raise that claim in state court has passed. *See Perruquet*, 390 F.3d at 514. He failed to frame his excessive sentence claim as a federal claim in his direct appeal; he relied solely on state law and did not make any reference to federal constitutional rights. In his post-conviction appeal, Thomas did not raise an excessive sentence claim at all. The procedural default therefore bars this Court from reaching the merits of Thomas's claim. Since Thomas has made no effort to show cause and prejudice, or a miscarriage of justice, as an excuse, the procedural default stands and Claim (2) is denied. *Perruquet*, 390 F.3d at 514.

To the extent ineffective assistance of appellate counsel is the thrust of Thomas's claim, that claim is also procedurally defaulted. Thomas did not raise a claim for ineffective assistance

---

[12] Further, in his reply brief, Thomas seems to waive any argument that his claim is not procedurally barred or non-cognizable. *See* Dkt. 67 at 6 ("No contest to the first two defenses, and I will prove merit.").

of appellate counsel in his direct appeal or post-conviction petition, so no state court has addressed this federal constitutional claim. *Bolton*, 730 F.3d at 696 (citing *Perruquet*, 390 F.3d at 514). And Thomas, again, offers no argument to establish cause or prejudice to excuse the default, so this claim is barred.

### 2. Claim (2) is not cognizable.

Even if it were not procedurally defaulted, Thomas's sentencing claim is not cognizable. Although Thomas develops Claim (2) under the Fifth Amendment right against self-incrimination, the Sixth Amendment right to effective assistance of appellate counsel, and the Sixth Amendment right to confrontation (Dkt. 67 at 5-6), Thomas's sentence is within the range established by Illinois law. *See United States ex rel. Sluder v. Brantley*, 454 F.2d 1266, 1269 (7th Cir. 1972) (the severity of a sentence "is not sufficient grounds for relief on federal habeas corpus" if the sentence is within the range established by Illinois law); *see also United States v. Vasquez*, 966 F.2d 254, 257 (7th Cir. 1992) (holding that unless trial court relied on improper criteria or unreliable information in imposing the sentence, habeas relief is not warranted). Thomas was convicted of attempted first-degree murder and was sentenced to a thirty-year prison term. Under the relevant Illinois sentencing statutes,[13] the trial court could have sentenced Thomas to between six and thirty years of imprisonment, choosing for Thomas the maximum possible penalty of thirty years. Since Thomas's sentence was within the statutory range, Claim (2) is not cognizable on federal habeas review.

Thomas asserts that the trial court relied on improper criteria, as the petition suggests an argument that his convictions violated the "one act – one crime" rule in Illinois, leading to an

---

[13] *See* 720 ILCS 5/8-4(c)(1) ("The sentence for attempt to commit first degree murder is the sentence for a Class X felony") and 730 ILCS 5/5-4.5-25(a) (for class X felonies: "The sentence of imprisonment shall be a determinate sentence of not less than 6 years and not more than 30 years").

excessive sentence. This argument, however, is based solely on state law and so it is also not cognizable on federal habeas review. *See, e.g., U.S. ex rel. King v. Cahill-Masching*, 169 F. Supp. 2d 849, 854-55 (N.D. Ill. 2001) (Castillo, J.) (rejecting "one act-one crime" claim because it relied on state law only).

The Court further discerns in Thomas's pleadings an argument that his sentence was based on inadmissible evidence (prior bad acts), *see* Dkt. 1 at 29 ("Defendant request[s] a new resentencing hearing without inadmissible evidence"), and an additional layer of argument related to ineffective assistance of Thomas's appellate counsel. *See* Dkt. 67 at 5-7 ("appellate counsel had a duty to investigate hearsay evidence admitted during sentencing"). To the extent inadmissible evidence at sentencing is the thrust of Claim (2), then the Court returns to the requirement that Thomas tie the facts he alleges to a deprivation of due process. *See Perruquet*, 390 F.3d at 512 (the petitioner must "draw[] enough of a connection between his right to due process and the trial court's (alleged) evidentiary and instructional errors to render his claim cognizable on habeas review."). Without such a tie—which Thomas fails to provide—Thomas's claim that certain evidentiary errors occurred at his sentencing hearing, leading the trial court to impose an excessive sentence, is not cognizable on federal habeas review. And since hearsay evidence is permitted at sentencing and Thomas does not challenge the truth of the prior bad acts at issue, he would have no claim in any event. *See United States v. Thomas*, 280 F.3d 1149, 1154 (7th Cir. 2002) ("Hearsay is permitting at sentencing as long as it is reliable and the defendant is afforded an opportunity to rebut the evidence.").

Thomas further argues, relying on *Estelle v. Smith*, 451 U.S. 454 (2010), that his Fifth Amendment right against self-incrimination was violated when expert witness Dr. Jonathan Lipman testified to Thomas's prior bad acts at sentencing. But Dr. Lipman was *Thomas's*

retained expert witness. Dkt. 60-9 at OO-4; OO-12. When the State asked Dr. Lipman questions about Thomas's prior bad acts during cross-examination, Thomas's attorney objected, arguing that Dr. Lipman was called as an expert on drugs and alcohol intake, and not as a "mitigation expert." *Id.* at OO-32-33. The court overruled the objection. *Id.* Thomas's case is unlike *Estelle*, in which the Supreme Court held that when a defendant neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, his compelled statements to a psychiatrist cannot be used against him. 451 U.S. at 468. Whether a "mitigation expert" or not, Thomas was not compelled to tell Dr. Lipman about his prior bad acts; he made voluntary statements to Lipman that were admissible at sentencing. There can therefore be no violation of Thomas's right against self-incrimination. Dkt. 60-9 at OO-12. Thomas's case is also unlike *Kansas v. Cheever*, in which the Supreme Court recently held that the prosecution may offer evidence from a court-ordered psychological examination for the limited purpose of rebutting the defendant's expert. 134 S.Ct. 596 (2013). Thomas's interview by Dr. Lipman, by contrast, was not court-ordered and completely voluntary. Dkt. 60-9 at OO-5 (explaining that Dr. Lipman was retained by Thomas's counsel for the purpose of reviewing records and interviewing Thomas). The State, then, was permitted to elicit testimony from Dr. Lipman at sentencing regarding statements Thomas previously made to Lipman.

Thomas also asserts that the Confrontation Clause of the Sixth Amendment was violated when he was not permitted to cross-examine witnesses at sentencing who testified about his future dangerousness. Dkt. 67 at 8-9. The Confrontation Clause, however, does not apply at sentencing. *See United States v. Roche,* 415 F.3d 614, 618 (7th Cir. 2005).

### III. Claims Reviewed on their Merits – Claims (3) and (4).

That leaves two claims for resolution on the merits—(3) and (4). As to these claims, the rulings of the Illinois Appellate Court were neither unreasonable applications of federal law nor unreasonable determinations of the facts in light of the evidence presented. 28 U.S.C. § 2254(a).

### A. Claim (3) – Juror Note.

Thomas asserts that during jury deliberations, the court considered a note from the jury after Thomas's counsel waived his appearance, resulting in an *ex parte* communication between the judge and jury. The trial transcript reflects the issue Thomas raises:

> THE COURT: All right. In the manner of Mr. Thomas, do you want him brought out?
> MS. CARBELLOS: No, I'll waive his presence.
> THE COURT: At 2:59, there was a note received from the jury, "Was his blood for drug alcohol level measured at the hospital," question mark.
> MS CARBELLOS: I would respectfully say that you should respond, "You have heard all the evidence, keep deliberating."
> MR. BRASSIL: State concurs.
> THE COURT: My response will be, "Jurors, you have received all," and I've underlined "all," "all of the evidence admitted at trial and will have to rely on that evidence in arriving at your verdicts. Please continue your deliberations."
> MR. CARBELLOS: That's fine.

Dkt. 60-7 at KK-106-07. Thomas asserts that he would have helped his defense counsel if he were present for the discussion, adding "I knew my blood was drawn twice at the hospital." Dkt. 45 at 8.

The Illinois Appellate Court reached the merits of the jury note claim. The court found it to be "problematic" that there was no evidence that Thomas voluntarily, knowingly, and intelligently waived his right to be present during the courtroom discussion of the note. Dkt. 60-2 at 60. The court also found, however, that Thomas's absence alone did not prejudice him because "that was the only proper response [to the note] under the circumstances." *Id.* at 61. The court

concluded that the circuit court did not err in dismissing Thomas's claim. *Id.* at 62. This Court finds that the state court's ruling was not an unreasonable application of federal law.

A defendant has a Sixth Amendment right to be present at all critical stages of the criminal proceedings. *See Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004) (citing *Illinois v. Allen*, 397 U.S. 337, 338 (1970)). Under Illinois law, jury deliberations are a critical stage of the trial affecting substantial rights. *See People v. Childs*, 159 Ill. 2d 217, 234 (1994). This right does not extend to every interaction between the court and the jury. *See Winters v. Miller*, 274 F.3d 1161, 1168 (7th Cir. 2001) (citation omitted). An *ex parte* communication between the judge and the jury creates a rebuttable presumption of error, but it does not constitute *per se* grounds for reversal. *Id.* (citation omitted). Thomas must still prove that the substance of the communication resulted in prejudice and that the defendant's presence "has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Moore*, 368 F.3d at 940 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)). Specifically, the Seventh Circuit has noted, "we look to see if the communications had a prejudicial effect on the defendant and rendered the trial 'fundamentally unfair.'" *Id.* (citation omitted).

As mentioned above, Thomas takes issue with his trial attorney's waiver of his appearance during the courtroom discussion about the jury note, and he adds that he "would have help[ed] in my defense, I knew my blood was drawn twice at the hospital." Dkt. 45 at 8. In his reply brief, Thomas states that he learned of the jury note from reading the trial record, and that his absence during discussion of the note "had a substantial and injurious effect on the jur[y]'s verdict." Dkt. 67 at 11, 14. The purpose of the prohibition against *ex parte* communications is to prevent the judge from improperly influencing the jury. *See Winters*, 274 F.3d at 1168 (citation omitted). Significantly, when a jury requests additional information or clarification, and that

request is denied, any error by the trial court is rebutted. *Id.* (citation omitted). In this instance, the jury's request for more information about whether Thomas's blood-alcohol level was measured at the hospital was effectively denied—the judge told counsel that he would respond to the jury with the statement "Jurors, you have received <u>all</u> of the evidence admitted at trial and will have to rely on that evidence in arriving at your verdicts. Please continue your deliberations." Dkt. 60-7 at KK-107. Even if Thomas were present, he could not have successfully changed the judge's denial of additional evidence, because no new evidence is permitted once the jury begins to deliberate. *See* Illinois Pattern Instruction 1.01(9); *see also* Dkt. 60-7 at KK-97 ("The evidence which you should consider consists only of the testimony of the witnesses and the exhibits which the court has received.") Any error by the trial court is harmless; Thomas's presence, even if improperly waived, would not have changed the outcome of his trial. Accordingly, this Court concurs with the state court's determination that Thomas's *ex parte* claim is without merit.

Alternatively, Thomas characterizes this claim as one for ineffective assistance of appellate counsel. *See* Dkt. 67 at 13 ("Post-conviction counsel was only concern[ed] with getting me to second stage of the act … right to effective assistance of counsel"); *see also id.* at 19 ("Claims 3, 4, 5 are ineffective assistance of appellate counsel"). This argument was not addressed by the appellate court on its merits, so if that is the thrust of Claim (3), it is procedurally defaulted. *See Lewis*, 390 F.3d at 1025 (a claim is procedurally defaulted if a habeas petitioner fails to assert his federal claim at each level of state court review). And in any event, as already noted, Thomas can identify no prejudice arising from the Court's handling of this jury note, so there would be no basis to conclude that he received ineffective assistance of appellate

counsel as the result of his trial attorney's waiver of his presence during the discussion of the note.

### B. Claim (4) – Sufficiency of the Evidence.

In his fourth claim, Thomas asserts that his direct appellate counsel was ineffective for failing to argue that the evidence at trial was insufficient to establish that Thomas had the specific intent to kill Hackett.[14] The Court will reach the merits of this claim, since it was raised in Thomas's state post-conviction review and it was addressed by the Illinois Appellate Court, which also reached the claim on its merits.

The appellate court applied *Strickland* as the relevant standard, which it stated as: "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." Dkt. 60-2 at 54 (citing *People v. Hodges*, 234 Ill. 2d 1 (2009)). The court noted that Thomas "had the opportunity to use his weapon, a Swiss Army knife, and did use it to inflict life-threatening injuries on his victim." *Id.* at 57. The court also noted that because Thomas's actions were "deliberate" and he was "aware of the severity of the injuries he inflicted," he had the specific intent to kill Hackett. *Id.* at 58. Accordingly, the court concluded that it was not arguable that, by deciding not to raise this issue on appeal, his appellate

---

[14] Although Thomas's amended habeas petition does not identify this claim clearly on its face, the Court discerns the thrust of this claim from other pleadings and opinions. In his state post-conviction brief before the Illinois Appellate Court, Thomas argued that his appellate counsel was "ineffective for failing to raise the argument that the evidence was insufficient to establish that Thomas had the specific intent to kill Hackett." Dkt. 60-3 at 2. In Thomas's reply brief in federal court, he cited to the section of the Illinois Appellate Court decision pertaining to ineffective assistance. Dkt. 67 at 14-15. Thomas goes on to describe certain evidence that he believes weakens the argument that he had the specific intent to kill Hackett. *Id.* at 15-19. *See also id.* at 19 ("Claims 3, 4, 5 are ineffective assistance of appellate counsel"). In sum, this Court believes Thomas is making an ineffective assistance of appellate counsel argument and will address the claim in that context.

counsel's performance fell below the standard of reasonableness. *Id.* The court further held that because the outcome of Thomas's direct appeal would not have been different had his appellate counsel raised the specific intent issue, it was not arguable that Thomas was prejudiced by his appellate counsel's decisions. *Id.*

The Illinois Appellate Court correctly identified *Strickland* as the relevant standard, so the only remaining question is whether the court's application of *Strickland* was unreasonable. 28 U.S.C. § 2254(d)(1). The Court finds nothing unreasonable about the appellate court's application of *Strickland* to Thomas's claim.

It was not unreasonable for the state court to conclude that Thomas's appellate counsel's performance was not deficient when he opted not to assert an argument on appeal that had virtually no chance of success. The appellate court reasonably concluded that in light of the overwhelming evidence of Thomas's deliberate actions, Thomas could not satisfy either prong of *Strickland* as a matter of law. The appellate court considered the evidence presented at trial that related to Thomas's intent—his expressed intent to kill Hackett, his use of a Swiss Army knife to inflict life-threatening injuries on Hackett through multiple stabbings, including the neck, and Thomas's incriminating statements to police officers upon his arrest—and found nothing to suggest that the outcome would have been different had Thomas's appellate counsel raised the issue of insufficient evidence of specific intent on appeal.

Thomas asserts several facts in support of his claim, including that Hackett's injuries, although severe, were not life-threatening, that he did not pursue Hackett but stopped to call 911, and that Thomas decided himself, without outside influence, to prevent himself from killing Hackett. Dkt. 45 at 8; Dkt. 67 at 14-18. But evidence on these points was presented to the jury, and it was the within the jury's province to reject Thomas's contentions regarding them. The

jury, for example, was entitled to credit the testimony of Dr. Yario, who testified that the injuries Hackett sustained *were* life threatening, over any contrary evidence Thomas offered. And the jury need not have inferred from the fact that Thomas broke off his attack, after stabbing and attempting to stab Hackett multiple times, to call 911 that he did not intend to kill Hackett *while he was stabbing her*. None of these facts offers a sufficient contrast to the evidence cited by the appellate court. To have succeeded on appeal with respect to an argument about the sufficiency of the evidence, Thomas would have been required to establish that no reasonable jury could have concluded that he intended to kill Hackett when he told her, "Now see, I have to kill you" and then stabbed her in the neck. *See People v. Bell*, 327 Ill. App. 3d 238, 240-41 (2002). His appellate counsel's decision not to advance an argument that dubious was not, by any reckoning, unreasonable, and the state court's conclusion that the outcome would be the same had appellate counsel raised the specific intent argument on appeal was not an unreasonable application of *Strickland*. Thomas's sufficiency of the evidence claim was doomed to fail and therefore Thomas's ineffective assistance of counsel claim must suffer the same fate.

### IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A state prisoner is required to obtain a certificate of appealability (from either the district court or from the appellate court) before the court of appeals has jurisdiction to rule on the merit of habeas appeals. 28 U.S.C. § 2253(c)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003). A certificate should issue when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to satisfy this standard, "[a] prisoner must show that reasonable jurists would find the district court's

assessment of the constitutional claim and any antecedent procedural rulings debatable or wrong." *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Thomas cannot make a substantial showing of the denial of a constitutional right, as it is not fairly debatable that the state court's determinations about the jury note claim and the sufficiency claim were unreasonable and the appellate court reasonably applied *Strickland* to Thomas's ineffective assistance of counsel claims. Nor is there reason to conclude that it is fairly debatable whether Thomas procedurally defaulted numerous claims and presented non-cognizable claims raising matters of state law. Therefore, the Court declines to enter a certificate of appealability.

* * *

For the reasons stated above, the Court denies Thomas's petition for writ of habeas corpus and declines to issue a certificate of appealability.

Date: December 23, 2013

John J. Tharp, Jr.
United States District Judge